# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# DOCKET NO. 3:09-CV-33-W

| | |
|---|---|
| PEGGY A. BARNETT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | ORDER |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| ) | |

THIS MATTER comes now before the Court upon the Plaintiff Peggy A. Barnett's Motion for Summary Judgment (Doc. No. 8), and the Defendant Commissioner's Motion for Summary Judgment (Doc. No. 10). Plaintiff, through counsel, seeks judicial review of an unfavorable administrative decision on her application for disability benefits.

After reviewing the motions, briefs, and administrative record, the Court is prepared to issue its order on Plaintiff's and the Commissioner's Motions for Summary Judgment. For the reasons set forth, Plaintiff's Motion for Summary Judgment is DENIED and the Commissioner's Motion for Summary Judgment is GRANTED. Accordingly, the Commissioner's decision is AFFIRMED.

## I. PROCEDURAL HISTORY

On September 19, 2000, Plaintiff filed an application for Supplemental Security Income benefits, alleging a disability as of February 1, 2000. Plaintiff's application was denied initially and on reconsideration. Plaintiff requested a hearing, which was held on December 5, 2001. On May 12, 2003, the Administrative Law Judge (ALJ) issued a decision denying Plaintiff benefits. Plaintiff requested review from the Appeal Council on June 3, 2003, and on December 24, 2003, the Appeals Council remanded the claim back to the ALJ. A second hearing was held on May 24, 2004. The

ALJ issued a decision denying Plaintiff benefits once again on July 28, 2004. On January 6, 2006, the Appeals Council denied Plaintiff's request for review. Plaintiff filed a complaint with this Court on March 6, 2006, and this Court, in an order signed by U.S. District Judge Graham Mullen, remanded the claim back to the Commissioner for a new hearing before a different ALJ on November 20, 2006. A third hearing was held on August 22, 2007. On January 24, 2008, the ALJ issued a decision denying Plaintiff benefits. The Appeals Council denied Plaintiff's Request for Review on December 1, 2008. Plaintiff filed a complaint in this Court on January 30, 2009, and the parties subsequently filed cross-motions for summary judgment. This Court held a hearing on the parties' cross-motions for summary judgment on March 25, 2010.

## II. FACTUAL BACKGROUND

Plaintiff was born on September 11, 1963, and completed school through tenth grade. Plaintiff's past relevant work includes waitressing, preforming "prep work" at restaurants, and working on the production line at Gerber's Children Wear.

Relevant to Plaintiff's claim of disability, Plaintiff was assaulted by her nephew and suffered an injured left hand and left arm in February 2000. She was evaluated and diagnosed with a left distal radial fracture and a left fracture of the scaphoid. Plaintiff received treatment, but continued to experience pain and swelling of the left arm and hand.

From 2000-2003, Plaintiff continued to receive medical treatment for a fractured wrist, left hand pain, left arm pain, and numbness/pain of the left foot. In August 2000, a CT scan revealed post-traumatic deformities of the distal radius and scaphoid, good callus formation and healing of the distal radius without complete osseous union and findings suspicious for early avascular necrosis. As a result, Plaintiff was referred for Occupational Therapy and surgery.

In December 2000, Plaintiff underwent arthroscopy with open reconstruction of the dorsal

radial ulnar ligament using a tendon graft from the fourth toe extensor of the left foot. This surgery was performed by Dr. Boatright and Dr. Johnson.

In 2002, Plaintiff received treatment from Dr. Taub for left hand wrist pain and left foot pain. Dr. Taub noted that Plaintiff was likely at the maximum level of recovery with regard to her wrist fracture, and further noted Plaintiff continues to have significant pain and would benefit from analgesics.

In July 2007, Plaintiff was treated for left arm pain, left foot swelling, and an inability to use her left arm for grooming or lifting. Plaintiff was diagnosed with a history of scaphoid fracture and distal radial fracture including neuropathic pain.

In August 2007, Plaintiff was treated based on complaints of her pain in her left arm and left ankle, and was diagnosed with chronic plain flare-up, and was referred for additional follow-up.

## III. STANDARD OF REVIEW

42 U.S.C. § 405(g) grants this Court the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." § 405(g). It is this Court's duty to determine both whether the Commissioner's findings are "supported by substantial evidence and whether the correct law was applied." Richardson v. Perales, 402 U.S. 389, 390 (1971); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

Substantial evidence is "more than a scintilla and [it] must do more than create a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir.

1986) (citing Perales, 402 U.S. at 401). The Fourth Circuit has recognized "it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the Secretary if his decision is supported by substantial evidence." Hays, 907 F.2d at 1456. The Court may set aside a determination of the ALJ only if it is not supported by substantial evidence or it is based upon legal error. Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987).

### IV. ANALYSIS

Plaintiff's first contention is that the Appeals Council failed to provide her with requested duplicate hearing recordings and a hearing transcript. Plaintiff argues that such a failure violated HALLEX (Hearings, Appeals and Litigation Law Manual) I-3-0-84 and, as a result, she was denied her right to file exceptions to the ALJ's decision because she did not receive these materials. In response, the Commissioner argues there is no supporting evidence to show the Appeals Council failed to provide the requested information, although there is a letter from Plaintiff's attorney that appears to re-request the materials. The Commissioner also argued that, even assuming the Plaintiff's assertion is true, it is unclear what remedy the Court should provide. The Commissioner further maintains that nothing prevented Plaintiff from filing exceptions to the ALJ's decision based on the evidence she had at her disposal. The Court agrees with the Commissioner on this issue. As previously stated, the Court's role is limited in its review of this matter, and Plaintiff has cited no legal authority supporting the notion that this Court should remand for an alleged failure or delay in providing copies. Accordingly, the Court is not persuaded that this is a grounds for a remand.

Plaintiff's second contention is that the ALJ was required to apply the regulatory factors set forth in SSR 96-7p and 20 C.F.R. § 404.1529 and failed to do so in reaching his decision. Plaintiff further maintains the ALJ summarily concluded that the claimant's statements concerning the

intensity, persistence and limiting affects of her symptoms are not entirely credible. The Court believes Plaintiff's arguments on this issue are unfounded.

20 C.F.R. § 404.1529(c)(1)-(3) generally provides that in evaluating the intensity and persistence of symptoms, the ALJ must consider all of the available evidence, including history, the signs and laboratory findings, other objective medical evidence, and statements from the claimant, treating and nontreating sources, and other persons about how the claimant's symptoms affect claimant. The ALJ should also consider the medical opinions of the claimant's treating source and other medical opinions. § 404.1529 (c)(3) sets forth other factors relevant to evaluating claimant's symptoms, such as pain, that the ALJ should consider including: (i) daily activities; (ii) the location, duration, frequency, and intensity of claimant's pain or other symptoms; (iii) precipitating and aggravating factors; (iv) the type, dosage, effectiveness, and side effects of any medication claimant takes or has taken to alleviate pain or other symptoms; (v) treatment, other than medication, claimant receives or has received for relief of pain or other symptoms; (vi) any measures claimant uses or has used to relieve pain or other symptoms; and (vii) other factors concerning claimant's functional limitations and restrictions due to pain or other symptoms.

SSR 96-7p provides that "[w]hen evaluating the credibility of an individual's statements, the adjudicator must consider the entire case record and give specific reasons for the weight given to the individual's statements," and "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight."

A review of the ALJ's findings confirm the ALJ addressed the regulatory factors in a lengthy and thorough discussion. The ALJ began by describing in detail the claimant's testimony about her injury and condition, including the hand pain and numbness in her foot. The ALJ went on to detail

claimant's testimony about her daily living, her functional limitations, her use of medications and other methods to relieve her pain, and the claimant's son's testimony about the claimant's symptoms and abilities. Then, the ALJ determined that claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that the claimant's statement concerning the intensity, persistence and limiting effects of these symptoms were not entirely credible. The ALJ, as SSR 96-7p requires, then explained his specific reasons for the weight given to the individual's statements. The ALJ stated he based his findings on "[claimant's] testimony that she wraps her foot for about 20 minutes every two hours due to foot pain and that she has to elevate her foot for 30 minutes after sitting in an office chair for an hour," and that this statement was "not credible in view of her activities of daily living, her lack of regular medical treatment, and her previous testimony that her foot does not bother her every day." The ALJ then notes that claimant's testimony is not consistent with her own statements to her treating and examining physicians because she had recently told Dr. Oriaku that she had to elevate her foot at the end of the day. The ALJ then reports he believes claimant's pain are exaggerated because she rated her pain 10/10, but had not sought any treatment for pain in the past several years. Plaintiff maintains the reason she did not seek medical treatment was due to lack of access to medical care, and the ALJ is not permitted to consider this fact. The Court agrees that the an ALJ may not consider lack of access to medical care, but here, the record substantially supports the ALJ finding because Plaintiff willfully missed numerous scheduled medical appointments during the period when Plaintiff had access to medical care. Plaintiff also reported that Dr. Johnson told her that she did not need physical therapy, but the ALJ notes, and the record shows, that Plaintiff repeatedly did not follow recommendations for physical therapy. Considering this, the Court finds the ALJ committed no

error of law because he properly considered the regulatory factors and provided sufficiently specific reasons for his credibility finding, which were supported by substantial evidence.

The Plaintiff's third contention is that the ALJ failed to comply with the requirements of SSR 96-8p when making his determination as to the claimant's residual functional capacity (RFC), and that the ALJ disregarded all the evidence that conflicted with his determination.

SSR 96-8p states that:

> the RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 CFR 404.1545 and 416.945. Only after that may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy.

Here, the ALJ did identify the individual's functional limitations and restrictions and assessed her work-related abilities on a function by function basis. Specifically, the ALJ noted that he gave substantial weight to the findings of the state agency medical consultant, Dr. Gardner. Dr. Gardner concluded that the claimant can sit, stand, or walk for about six hours in a work day, cannot use left hand controls, can lift and carry 20 pounds occasionally and 10 pounds frequently, and has no postural limitations, no environmental limitations, and no manipulative limitation on the use of her right hand, but can use her left hand for handling and fingering only occasionally. In making this function by function assessment, the ALJ agreed with the functional limitations imposed by Dr. Gardner, but also imposed further limitations associated with the use of her left foot based on additional evidence and testimony. The ALJ also gave substantial weight to Dr. Baumblatt's and Dr. Oriaku's conclusions. Dr. Baumblatt found that claimant could sit, stand, move about, lift, carry, and handle objects, hear, speak, and travel normally, except for her left hand. Dr. Oriaku's concluded that claimant could lift up to 10 pounds occasionally with her left hand, that she has no limitations of her right hand, that she could sit, stand, and walk for six hours at a time or for a full

8 hours work day, but might not be able to use her left hand. The ALJ notes also that Dr. Oriaku found that she could use her right hand continually for reaching and manipulative movements, but could use her left arm frequently for reaching and occasionally for handling, fingering, feeling, and pushing/pulling, that she could operate foot controls with her right foot continually and with her left foot frequently, that she could climb stairs continually and ladders occasionally, that she could stoop and balance frequently, and that she could knell, crouch, and crawl continually. Dr. Oriaku further added limitation on occasional exposure to extremes of temperature and humidity. The ALJ relied on these facts to support his assessment that the claimant has persistent functional limitations in the left hand, but has no limitation on the right hand, and no limitations on sitting, postural movements, and meeting the mental demands of work. The ALJ also found that the claimant has a limitation on prolonged standing and walking due to her left foot. Based on this, the Court finds that ALJ committed no error of law because the ALJ completed the RFC assessment in accordance with SSR 96-8p and his conclusion is supported by substantial evidence.

Plaintiff's fourth contention is that the ALJ failed to resolve an apparent, unresolved conflict between the Dictionary of Occupational Titles (DOT) and the vocational expert's testimony as required by SSR 00-4p. The vocational expert identified specific jobs that the Plaintiff could perform, which included tanning salon attendant (DOT #359567014), information clerk (DOT #237367018), and furniture rental consultant (DOT #295357018). The ALJ referenced these specific jobs in his findings and reported that the vocational expert's testimony is consistent with the information contained in the DOT.

In her initial brief, Plaintiff alleged that the DOT code for the tanning salon attendant given by the vocational expert does not exist. The Commissioner initially conceded this point in its response. During oral arguments, the Court asked the parties about this issue because the Court had

found a reference to the tanning salon attendant position, with the same DOT code indicated by the vocational expert, on the Occupational Information Network. The Court asked the parties to submit a supplement brief to explain the apparent discrepancy, which the Court would use to determine whether the ALJ committed an error. The Court has learned that the Department of Labor (DOL) was developing O*Net, intended to eventually replace the DOT, and during this time the DOL created 23 DOT codes and titles for jobs that were not published in the 1991 Revised Fourth Edition of the DOT. The tanning salon attendant code was one of these unpublished codes. As recognized by SSR 00-4p, ALJ's primarily rely on the DOT for information about the requirements of work in the national economy in making disability determinations. Even with this information, Plaintiff argues that the ALJ failed to resolve a conflict between the testimonty of the vocational expert and the DOT. The Court is not convinced there was a conflict since the code existed in some manner,but recognizes there could be a problem with the ALJ relying on a technically unpublished DOT code. Though the Court reserves judgment on this issue, even if the Court were to find the ALJ relied on the tanning salon attendant position in error, such error would be harmless. In Tarpley v. Astrue, the court adopted a Memorandum & Recommendation that found when the vocational expert listed a non-existent DOT code for that title and incorrectly identified a job that was not classified as the vocational expert testified, the ALJ's reliance was error. 2009 WL 1649774, *14 (E.D.N.C. June 1, 2009). However, the court found such error was harmless because the ALJ relied appropriately upon the vocational expert's testimony regarding two other positions that claimant could perform. Id. Assuming without deciding here that the ALJ improperly relied on the unpublished DOT code, the Court finds the ALJ's reliance was at most harmless error because the ALJ appropriately relied on the vocational expert's testimony regarding the information clerk and furniture rental consultant positions.

With regard to the other two positions, Plaintiff argues there remains an unresolved conflict between the vocational expert's testimony and DOT. Plaintiff argues the DOT printout for the job of information clerk states that reaching and handling are frequent and fingering is occasional, and thus points to a conflict. Plaintiff argument here is unpersuasive because the ALJ noted Plaintiff has the use of her right hand, and has limitations in the left hand. In Gray v. Heckler, the First Circuit found substantial evidence to support the ALJ's conclusion that claimant, who had limited use of her right arm, could perform the type of work involved in a sales clerk job as it did not necessarily require continual use of both arms for long periods of time or frequent heavy lifting. 760 F.2d 369, 374 (1st Cir. 1985). Similarly here, Plaintiff has the full use of her right hand though her left hand is limited. Accordingly, the Court finds the vocational expert's testimony and DOT do not appear to conflict and the ALJ properly relied upon the vocational expert's testimony that Plaintiff could perform this type of work.

Plaintiff also points out that the DOT printout for this job of furniture consultant requires guiding or accompanying customers through the showroom. Plaintiff has a limitation on prolonged standing and walking due to her left foot, as recognized by the ALJ. Plaintiff argues that it is likely the job would require Plaintiff to stand more than twenty minutes or walk more than two blocks. The Commissioner responds, and the Court agrees, that guiding and accompanying customers is just one of twelve duties listed for the position, and a majority of the duties do not require standing or walking. The Court also agrees with Commissioner's argument that Plaintiff is purely speculating that Plaintiff might have to be on her feet for more than twenty minutes or walk more than two blocks because the job description contains no such specific requirement. Plaintiff further argues the job requires occasional reaching, handling, and fingering. Plaintiff argument is again unpersuasive because the position would not necessarily require continual use of both arms. Thus,

the vocational expert's testimony and DOT do not appear to conflict, and the ALJ properly relied upon the vocational expert's testimony that Plaintiff could perform this type of work.

## V. CONCLUSION

Based on the foregoing reasons, the Court finds the Commissioner's decision denying benefits was based on substantial evidence and applied the correct legal standards. Therefore, Plaintiff's Motion for Summary Judgment is DENIED and the Commissioner's Motion for Judgment on the Pleadings is GRANTED. Accordingly, the Commissioner's decision is AFFIRMED.

IT IS SO ORDERED.

Signed: May 7, 2010

Frank D. Whitney
United States District Judge